UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GUNZENHAUSER,<br><br>Plaintiff,<br><br>v.<br><br>MERRICK B. GARLAND,<br><br>Defendant. | Case No. 3:22-cv-03406-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 52 |

Plaintiff Michael Gunzenhauser filed this lawsuit against his former employer, the Bureau of Prisons ("BOP"), alleging that the BOP and its employees discriminated against him based on his disability when he was not selected for a new open position. The defendants move for summary judgment. Gunzenhauser does not point to any evidence showing that the defendants' proffered reasons for not selecting him—that the other candidate was better qualified and came more highly recommended—were mere pretext for discrimination. He therefore cannot meet his burden under the *McDonnell Douglas* test, and there are no genuine disputes of material fact to preclude summary judgment. For those and the following reasons, the defendants' motion is granted.

**BACKGROUND**

I. **FACTUAL BACKGROUND**

The following facts are undisputed.

Gunzenhauser was employed by the BOP from 1992 until 2018, when he retired. Deposition of Michael Gunzenhauser ("Gunzenhauser Depo.") [Dkt. No. 52-1] Ex. A, [Dkt. No. 53-1] Ex. A 26:18-20, 55:17-18. Around the year 2000, he was diagnosed with cancer and spent about a year in the hospital. *Id.* 68:6-12, 75:9-16. He endured several other surgeries and

1  operations due to the cancer. *Id.* 58:10-19. As a result of the cancer and surgeries, he now lives

2  with a colostomy bag. *Id.* 77:7-9. The colostomy bag requires him to use the restroom several

3  times a day, which often leaves behind an odor that other workers made comments about. *Id.*

4  82:11-83:4.

5        In 2011, Gunzenhauser—at the time an education specialist at the BOP—was assigned the

6  higher role of Regional Education Administrator ("REA"), on an "acting" basis. *Id.* 46:16-47:16,

7  51:13-21, 52:16-17; July '16 Affidavit of Michael Gunzenhauser ("Gunz. Aff. July '16") [Dkt No.

8  52-1] Ex. B at 14. His supervisor was Joseph Moorhead. Gunzenhauser Depo. 103:12-18.

9  Gunzenhauser held the role until May 2012, Gunz. Aff. July '16 at 14, when the role disappeared

10 due to restructuring, Gunzenhauser Depo. 52:16-24. Soon after, he moved to FCI Dublin, where

11 he worked from June 2013 until his retirement in 2018. *Id.* 55:3-23. His supervisor was Joanne

12 Tran. *Id.* 55:3-23.

13       In 2015, the BOP began soliciting applications for a new REA role. *See* Interrogatory of

14 Mary Mitchell ("Mitchell Rog.") [Dkt. No. 52-1] Ex. D at 3. Gunzenhauser applied, along with

15 seven other candidates. *Id.* One of those candidates was Tran; another was Michael Chavez. *See*

16 *id.* at 4; Gunz. Aff. July '16 at 13; Deposition of Mary Mitchell ("Mitchell Depo.") [Dkt. No. 53-

17 1] Ex. E, [Dkt. No. 54-1] Ex. A 27:2-4; Deposition of Louis Milusnic ("Milusnic Depo.") [Dkt.

18 No. 53-1] Ex. F, [Dkt. No. 54-1] Ex. B. 43:12-17.

19       The hiring official for the new REA role was Mary Mitchell. Mitchell Rog. at 3. In

20 addition to working at FCI Dublin at the same time, Mitchell and Gunzenhauser worked at the

21 BOP facility in Atlanta at the same time in the early 2000s, when Gunzenhauser was being treated

22 for cancer. Gunzenhauser Depo. 31:11-12, 58:2-9, 59:1-62:7.

23       Mitchell narrowed the candidate list down to Gunzenhauser and Chavez and decided to

24 request a second round of references. Mitchell Depo. 28:2-23. Louis Milusnic helped Mitchell

25 solicit references for applicants. Mitchell Rog. at 5, 7. Chavez's first reference came from the

26 associate warden, and his second came from the warden. Mitchell Depo. 28:7-16. For

27 Gunzenhauser, the first reference came from the associate warden and the second from Moorhead.

28 Mitchell Rog. at 5.

United States District Court
Northern District of California

2

Chavez's references provided all "above average ratings." Mitchell Rog. at 5. Gunzenhauser's first reference provided above average ratings, but his second reference, from Moorhead, provided "average" ratings for "oral communication skills, written communication skills, and responsiveness," and stated that Moorhead would not recommend employing Gunzenhauser as the new REA. *Id.*

Mitchell ultimately selected Chavez for the role. *Id.* at 4-5. She said that her selection was based on Chavez's superior references and higher education, as well as that Chavez had been involved in the "development" of "innovative" programs and changes, while Gunzenhauser only had experience "testing new programs" and reviewing existing ones. *Id.*

Gunzenhauser testified that Mitchell, Moorhead, and Milusnic did not make discriminatory comments toward him about his disability. Gunzenhauser Depo. 125:1-11. He also did not recall speaking to Mitchell or Milusnic about his colostomy bag. *Id.* 81:14-82:6, 83:20-22.

## II. PROCEDURAL BACKGROUND

Following notification of his non-selection for the REA position, on March 14, 2016, Gunzenhauser filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging the non-selection was due to disability discrimination and retaliation for previously filing a complaint with the EEOC. [Dkt. No. 18] Ex. A. After some procedural turns, Gunzenhauser received his Right to File a Civil Action on March 14, 2022. *Id.* Ex. B. He timely filed his initial complaint in this court. [Dkt. No. 1].

Gunzenhauser subsequently filed an amended complaint, and I granted in part and denied in part the defendants' motion to dismiss that complaint. ("Prior Order") [Dkt. No. 26]. Following that order, the sole remaining claim in this case is for disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. ("Rehabilitation Act").

The defendants filed a motion for summary judgment. ("Mot.") [Dkt. No. 52]. Gunzenhauser opposed. ("Oppo.") [Dkt. No. 53]. The defendants replied. ("Repl.") [Dkt. No. 54]. I held a hearing at which counsel for both parties appeared.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is

3

1   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
2   law." Fed. R. Civ. Proc. 56(a).  In order to prevail, a party moving for summary judgment must
3   show the absence of a genuine issue of material fact with respect to an essential element of the
4   non-moving party's claim, or to a defense on which the non-moving party will bear the burden of
5   persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has
6   made this showing, the burden then shifts to the party opposing summary judgment to identify
7   "specific facts showing there is a genuine issue for trial." *Id.*  The party opposing summary
8   judgment must then present affirmative evidence from which a jury could return a verdict in that
9   party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).
10      On summary judgment, the court draws all reasonable factual inferences in favor of the
11  non-movant. *Id.* at 255.  In deciding a motion for summary judgment, "[c]redibility
12  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the
13  facts are jury functions, not those of a judge." *Id.*  However, conclusory and speculative testimony
14  does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*
15  *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

17  Gunzenhauser's sole claim is for disparate treatment or "non-affirmative action" under
18  § 501 of the Rehabilitation Act, 29 U.S.C. § 791(g).  Prior Order 7:8-11; *see also Stewart v.*
19  *United States*, No. C-99-4058 JCS, 2000 WL 1705657, at *4 (N.D. Cal. Oct. 10, 2000).
20  Discrimination claims brought under § 501 use the *McDonnell Douglas*[1] burden-shifting
21  framework for Title VII discrimination claims.[2]  *Stewart*, 2000 WL 1705657, at *4 (citing *Smith v.*

---

[1] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[2] The Ninth Circuit recently explained that for ADEA or Title VII discrimination suits at summary judgment, the plaintiff "may proceed by [either] using the *McDonnell Douglas* framework . . . or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's contested conduct." *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023) (citations and quotation marks omitted).  The court held that the second test could apply instead of the "prima facie" test at the first step of *McDonnell Douglas*. *See id.* at 721-23.  The Ninth Circuit did not clearly apply that holding to claims of discrimination under the Rehabilitation Act, though given other overlapping case law, it likely applies.  However, the parties do not discuss the second path for surviving summary judgment— evidence that discrimination more likely than not motivated the defendants' conduct—and so I

4

1  *Barton*, 914 F.2d 1330, 1339 (9th Cir. 1990)); *see also McCoy v. Dep't of Army*, 789 F. Supp. 2d
2  1221, 1229-30 (E.D. Cal. 2011) (same). First, the plaintiff must make a prima facie case of
3  discrimination under § 501, which requires demonstrating "(1) she is a person with a disability, (2)
4  who is otherwise qualified for employment, and (3) suffered discrimination because of her
5  disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), *superseded by*
6  *statute on other grounds* (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th
7  Cir. 2005, *as amended*)). Second, "'the burden shifts to the employer to articulate a legitimate,
8  nondiscriminatory reason' for the employment decision." *Chand v. Regan*, No. 21-CV-07773-RS,
9  2022 WL 2390996, at *3 (N.D. Cal. July 1, 2022) (quoting *Campbell v. Brennan*, No. 15-CV-
10 03582-JSC, 2018 WL 620186, at *5 (N.D. Cal. Jan. 30, 2018)); *see also Raytheon Co. v.*
11 *Hernandez*, 540 U.S. 44, 53-54 (2003). Third, "[i]f the employer offers a nondiscriminatory
12 reason, the burden returns to the plaintiff to show that the articulated reason is a 'pretext' for
13 discrimination." *Chand*, 2022 WL 2390996, at *3 (quoting *Campbell*, 2018 WL 620186, at *5);
14 *see also Thompson v. Donahoe*, 961 F. Supp. 2d 1017, 1030 (N.D. Cal. 2013) (citing *Stegall v.*
15 *Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (same).

16     Here, the defendants argue that Gunzenhauser failed to make a prima facie showing of
17 discrimination based on his non-selection, and even if he made such a showing, he did not and
18 cannot point to evidence that the defendants' nondiscriminatory reason for the decision was
19 pretext.

20 **I.    STEP 1: PRIMA FACIE CASE OF DISCRIMINATION**

21     To make a prima facie case of discrimination under § 501 of the Rehabilitation Act at the
22 summary judgment stage, "a plaintiff must show that: (1) at the time of the alleged discrimination,
23 the plaintiff had a disability within the meaning of the Rehabilitation Act; (2) except for her
24 disability, she was otherwise qualified for the position; and (3) she suffered an adverse
25 employment action because of her disability." *Thompson*, 961 F. Supp. 2d at 1031-32 (citing
26 *Walton*, 492 F.3d at 1005). At the first step of the *McDonnell Douglas* analysis for § 501 claims,

27 ―――――――――――

28 need not address it here. That said, for all of the reasons discussed throughout this Order, Gunzenhauser has not pointed to sufficient evidence to meet this test, either.

"[t]he requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *McCoy*, 789 F. Supp. 2d at 1229-30 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)). "Although the burden of proof remains on plaintiff throughout the burden-shifting analysis, 'as a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.'" *Id.* (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)). "This is because the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by a factfinder, upon a full record." *Id.* (quoting *Chuang*, 225 F.3d at 1124).

The parties do not dispute that the first two elements are met and instead focus on the third: whether Gunzenhauser pointed to evidence creating a genuine dispute of material fact that the decision to not select him for the role was because of his disability. The defendants' sole argument is that Gunzenhauser cannot make a prima facie showing that he was denied the role based on his disability because he cannot show that Mitchell, the deciding officer, knew of his disability. *See* Mot. 9:7-10:20; Repl. 1:17-3:1. It is true that an employer must be aware of a disability in order for any adverse action "to have been based, even in part, on [a plaintiff's] disability." *Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351-PHX-JAT, 2018 WL 4899603, at *18 (D. Ariz. Oct. 9, 2018) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003)). And "if no part of the hiring decision turned on [the plaintiff's] status as disabled, he cannot, *ipso facto,* have been subject to disparate treatment." *Raytheon*, 540 U.S. at 54 n.7.

But here, drawing all reasonable inferences in Gunzenhauser's favor, there is sufficient evidence from which it can be inferred that Mitchell knew of his disability and use of the colostomy bag. For example, the defendants dispute whether Mitchell knew of Gunzenhauser's colostomy based on her visits to him in the hospital when he was being treated for cancer, but this merely creates a genuine dispute of material fact. *See* Gunzenhauser Depo. 58:2-9, 81:14-24 (stating that Mitchell knew of Gunzenhauser's "condition, my disability and, you know, the hospitalizations" and that she visited him in the hospital); Affidavit of Margaretha Gunzenhauser-

Rhodes [Dkt. No. 53-1] Ex. B (stating that Mitchell visited Gunzenhauser in the hospital); Mitchell Depo. 55:8-13.  There is also evidence that Gunzenhauser's colostomy bag was visible "during the normal course of work" including because he "was allowed by management to wear his shirt untucked"; that his use of the bag was known throughout the facility, including by staff; and that anyone who met or came in contact with Gunzenhauser was aware of his colostomy bag.  *See* Declaration of Christopher Cruz ("Cruz Decl.") [Dkt. No. 53-3] ¶¶ 7, 9-11; Declaration of Pearl Wilkins ("Wilkins Decl.") [Dkt. No. 53-4] ¶ 6.  And there is evidence that his section of the facility had only one restroom, Gunzenhauser used it often to clean his colostomy bag, he left behind a strong odor whenever he used the restroom, and other staff members complained or teased him about the odor.  Gunzenhauser Depo. 82:11-83:4; Wilkins Decl. ¶ 9; *see also* Gunz. Aff. July '16 at 21 (indicating Gunzenhauser's frequent use of the restroom); Cruz Decl. ¶ 10 (same).  Combined with the evidence that Mitchell worked in-person at the facility and that she personally interacted with Gunzenhauser at the facility, Wilkins Decl. ¶ 8, a reasonable factfinder could infer that she saw and knew of his colostomy bag and therefore was aware of his disability.  *See Marquez*, 2018 WL 4899603, at *18 ("An employer knows an employee has a disability . . . when the employer otherwise becomes aware of the condition, such as . . . by observation." (citation omitted)).  Indeed, a reasonable factfinder could even infer that Mitchell knew of the odor left by the bag because there was only one restroom in that department, and if Mitchell worked in-person, she likely used the restroom at some point.

Accordingly, the defendants' sole argument to this point is unpersuasive.  Gunzenhauser has otherwise made a prima facie case of discrimination based on his disability.

## II.  STEP 2: LEGITIMATE, NONDISCRIMINATORY REASON

Next, the burden shifts to the defendants to point to a legitimate, nondiscriminatory reason for the adverse employment action.  *Chand*, 2022 WL 2390996, at *3.  The defendants meet their burden by pointing to evidence that the chosen candidate, Chavez, was more qualified and had better reviews than Gunzenhauser, and that Chavez was involved in the "development" of "innovative" programs and changes while Gunzenhauser only had experience "testing new programs" and reviewing existing ones.  Mitchell Rog. at 4-5.  Gunzenhauser does not dispute that

1  the defendants meet their burden. *See generally* Oppo. This element is met.

## III. STEP 3: PRETEXT FOR DISCRIMINATION

Finally, the burden shifts back to Gunzenhauser to point to evidence showing that the defendants' proffered reasons for the adverse employment action were mere pretext for discrimination. *See Chand*, 2022 WL 2390996, at *3. A plaintiff can meet this burden of showing pretext by pointing to direct evidence, circumstantial evidence, or "a combination of the[se] two kinds of evidence." *Opara v. Yellen*, 57 F.4th 709, 723 (9th Cir. 2023) (quoting *Chuang*, 225 F.3d at 1127). "Under any approach, generally, 'very little[] evidence is necessary to raise a genuine issue of fact regarding an employer's motive.'" *Id.* at 723-24 (citation omitted). But "where abundant and uncontroverted independent evidence suggests that no discrimination occurred, plaintiff's creation of only a weak issue of fact as to whether the employer's reason was untrue will not suffice." *Id.* at 724 (cleaned up) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000)); *but see Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ("To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." (citations omitted)).

To make a sufficient showing of pretext to defeat summary judgment, a plaintiff must show that "either . . . a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quoting *Chuang*, 225 F.3d at 1123); *see also Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1038 (C.D. Cal. 2014) (same).[3] "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting h[er] prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (first citing *Chuang*, 225 F.3d at 1127;

---

[3] *Opara*, *Villiarimo*, and *Vasquez* were Title VII and ADEA cases but their explanations of the *McDonnell Douglas* burden shifting applies. *See, e.g.*, *Stewart*, 2000 WL 1705657, at *4; *Smith*, 914 F.2d at 1339.

and then citing *Reeves*, 530 U.S. at 146-47) (applying the standard under the ADA).

In *Villiarimo*, the Ninth Circuit held that where the employer fired the plaintiff based on something a witness said about her actions, the plaintiff could not show pretext merely by showing that the witness testimony was objectively false, so long as the employer "honestly believed its reason for its actions." 281 F.3d at 1063 (citation omitted).

Citing *Villiarimo*, the Honorable Donna M. Ryu rejected a plaintiff's argument "that a reasonable jury could find that it was improper" for her employer to take an adverse employment action for the proffered reason. *Anderson v. City & Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1017 (N.D. Cal. 2016). Judge Ryu explained that courts "only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" *Id.* (quoting *Villiarimo*, 281 F.3d at 1063); *see also Flanagan v. City of Richmond*, No. 14-CV-02714-EMC, 2015 WL 5964881, at *17 (N.D. Cal. Oct. 13, 2015), *aff'd*, 692 F. App'x 490 (9th Cir. 2017) ("If Defendants honestly *believed* the Investigative Report's findings, then pretext would not be found absent evidence that Defendants 'did *not* honestly believe its proffered reasons.'" (quoting *Villiarimo*, 281 F.3d at 1063)). Judge Ryu also rejected the plaintiff's argument that the defendants' investigation was deficient because the plaintiff pointed to no evidence that "support[ed] an inference that [the investigation] violated [employer] policy or . . . that he employed investigatory techniques that were different from those used in similar situations." *Anderson*, 169 F. Supp. 3d at 1017-18.

Gunzenhauser asserts that the defendants' proffered reasons are pretextual for three reasons: (1) the defendants departed from their standard hiring procedure with respect to obtaining references; (2) Moorhead "admitted" his review of Gunzenhauser was inaccurate; and (3) the proffered reasons are contradicted by the record, which shows that Gunzenhauser was more qualified than the selectee. *See* Oppo. 15:19-21:16. None is sufficient to show pretext.

First, that Mitchell and Milusnic obtained a second reference from someone other than Gunzenhauser's first-line supervisor or the warden does not show that the defendants' reliance on that reference was pretext for discrimination. Gunzenhauser's theory is apparently that the Mitchell and/or Milusnic was motivated by discriminatory reasons in obtaining a reference from

9

1  Moorhead, who supervised Gunzenhauser when he previously held the role to which he was
2  applying again, instead of getting the reference from the warden or from Gunzenhauser's first-line
3  supervisor, Tran, who was applying to the same role.  While "[d]eviations from protocol and
4  procedural irregularities may give rise to an inference of pretext" under the *McDonnell Douglas*
5  test, here Gunzenhauser fails to provide any evidence that the reference check constituted such a
6  "deviation."  *Bonillas v. United Air Lines, Inc.*, No. C 12-6574 SBA, 2014 WL 4087906, at *9
7  (N.D. Cal. Aug. 19, 2014) (citation omitted); *see also Earl v. Nielson Media Research, Inc.*, 658
8  F.3d 1108, 1117 (9th Cir. 2011).  Instead, he points to deposition testimony where Mitchell and
9  Milusnic say that they "typically" asked first-line supervisors for references, Milusnic Depo.
10 66:21-67:4; Mitchell Depo. 20:1-21, but sometimes would depart from that practice, including for
11 "acting" positions for chain of command reasons, Milusnic Depo. 19:2-22, and for situations
12 where an applicant's first line supervisor applied to the same position, *id.* 43:12-17, 46:3-10;
13 Mitchell Depo. 26:23-27:4; *cf. Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1214 (9th Cir.
14 2008) (holding that the defendant's *concession* that he violated written company policy could be
15 evidence of intent to discriminate and should be considered by the jury).  If anything, Milusnic's
16 deposition established that they asked Moorhead for a reference because he supervised
17 Gunzenhauser in the REA position, which was the same position that Gunzenhauser was applying
18 for again.  Milusnic Depo. 42:12-14, 44:9-13, 62:2-8.  This does not show the defendants'
19 reference request was pretextual, nor does it create a genuine dispute of fact regarding the truth of
20 the defendants' proffered reasons for the employment decision.  *See Snead*, 237 F.3d at 1094.
21 And importantly, Gunzenhauser's reference theory is not logical given the record.  *See*
22 *Opara*, 57 F.4th at 724 (noting that a "weak" issue of fact will not overcome "abundant and
23 uncontroverted independent evidence" of no discrimination (citations omitted)).  To show
24 discriminatory intent based on the decision to choose Moorhead, Gunzenhauser would have to
25 point to evidence that Mitchell or Milusnic knew or had reason to believe that Moorhead's
26 reference would not be strong.  If they did not know it would be negative, or if they suspected it
27 might be positive, it would not make sense for them to choose him as a reference because the
28 choice could hinder their discriminatory motives.  But there is no evidence in the record that

1  establishes this knowledge or belief. Instead, the evidence shows that Moorhead previously
2  provided positive feedback regarding Gunzenhauser's performance in that role, implying that
3  subsequent references could be strong. *See* [Dkt. No. 53-1] Ex. J (Moorhead's "performance work
4  plan" review of Gunzenhauser in REA role). To the extent that Mitchell or Milusnic knew of this
5  prior feedback, which is not in the record, it would support the finding that they believed a
6  reference from Moorhead would be positive, not negative. Though of course Moorhead's ultimate
7  reference did not support Gunzenhauser's candidacy, this alone does not show discriminatory
8  intent on the part of Mitchell or Milusnic. Therefore, the record does not support Gunzenhauser's
9  theory that the changed practice evidenced discriminatory intent.

10  Next, Moorhead's supposed admission of falsity also fails to show pretext. As a
11  preliminary matter, the defendants are correct that the record does not show what Gunzenhauser
12  asserts—that Moorhead admitted his reference was inaccurate and he would have written a
13  different reference today—but instead shows that Moorhead repeatedly distinguished his
14  contemporaneous and strong performance evaluation of Gunzenhauser from the opinion-based
15  reference check that he gave two years later. *See* Deposition of Joseph Moorhead ("Moorhead
16  Depo.") [Dkt. No. 53-2] Ex. E, [Dkt. No. 54-1] Ex. C, 43:21-45:18, 48:8-50:11, 53:23-54:11. But
17  even if a reasonable factfinder could interpret the record as Gunzenhauser suggests, Moorhead's
18  alleged inaccuracy does not help Gunzenhauser's case. Rather, like in *Villiarimo*, 281 F.3d at
19  1063, where the Ninth Circuit held that the plaintiff could not show pretext by showing that the
20  employer relied on false witness testimony unless she could show that the employer did not
21  honestly believe the testimony, here too Gunzenhauser cannot show pretext by showing that
22  Mitchell relied on Moorhead's false reference unless Gunzenhauser puts forth evidence that
23  Mitchell did not "honestly believe[]" that reference. He does not do so.[4] This argument therefore

---

[4] In *Anderson*, Judge Ryu noted that "Title VII may still be violated where the ultimate decisionmaker, lacking individual discriminatory intent, takes an adverse employment action in reliance on factors affected by another decisionmaker's discriminatory animus." 169 F. Supp. 3d at 1019 (citation omitted). Gunzenhauser does not argue that this applies to § 501 claims, and he points to no evidence that it applies here or that Moorhead's reference was motivated by discriminatory animus. Rather, Gunzenhauser only asserts that Moorhead's reference was "inaccurate" and the record shows only that it was "inconsistent" with the prior performance evaluation, but it does not include an explanation for why. *See* Moorhead Depo. 54:25-56:4.

11

does not support a finding of pretext.

Finally, asserting that the record contradicts the defendants' proffered reasons for Gunzenhauser's non-selection—essentially an argument about the merits of the decision—does not create a genuine dispute regarding pretext here. *See* Oppo. 17:24-18:7; Gunzenhauser Depo. 119:1-120:10. First, even if Gunzenhauser's documents show that his qualifications were "clearly superior" to Chavez's, which can be sufficient to create a dispute of fact regarding pretext, *see Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003), *as amended* (citations omitted), Gunzenhauser does not point to evidence showing that Mitchell knew of any of these "superior" qualifications. He asserts that Mitchell considered "experience as an educator, leadership skills, involvement in national programs, and levels of responsibility . . . in[] her selection decision," Oppo. 18:3-5, and cites many documents that he says show his qualifications were superior in these areas, *id.* 18:8-21:4, but he does not show that Mitchell knew of these qualifications or had access to any of these documents. The investigative interrogatory that Mitchell signed in 2016, which shows that Mitchell relied on the candidates' "application materials" and that she "reviewed all applications/resumes and reference check forms," Mitchell Rog. at 3-5, does not show that she reviewed or had access to any of the documents that Gunzenhauser now relies upon. *See also* Mitchell Depo. 9:5-10:4, 14:23-15:14 (explaining that Mitchell did not look at materials beyond the application packet, which was put together by the "staffing section in Texas"). If Gunzenhauser cannot show that Mitchell knew he was better qualified, he cannot show that she passed over him as a "clearly superior" candidate.

Second, Gunzenhauser's argument parallels ones rejected in *Villiarimo*, *Anderson*, and *Flanagan*. Those cases held that pretext cannot be established merely by showing the inaccuracy or falsity of a report or witness testimony relied upon by a decision-maker in an adverse employment action. *See Villiarimo*, 281 F.3d at 1063; *Anderson*, 169 F. Supp. 3d at 1017; *Flanagan*, 2015 WL 5964881, at *17. As applied to Gunzenhauser's argument, he cannot establish pretext by arguing that Mitchell should have considered other materials that demonstrate his qualifications, because that is akin to arguing that the underlying applications or materials relied upon were inaccurate due to their incompleteness. And because he does not point to

1  evidence that Mitchell did not honestly believe the information she relied upon from the
2  "application materials," "applications/resumes[,] and reference check forms," [Dkt. No. 52-1] Ex.
3  D at -125-26, he does not meet his burden to establish pretext. *See Anderson*, 169 F. Supp. 3d at
4  1017.

5  Third, Gunzenhauser's personal views about the superiority of his qualifications cannot
6  establish a genuine dispute that the defendants' reasons for choosing Chavez were pretextual. *See,*
7  *e.g.*, *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (holding, under Title
8  VII, "an employee's subjective personal judgments of her competence alone do not raise a genuine
9  issue of material fact" regarding pretext (citation omitted)). This argument, too, fails.

10 Accordingly, Gunzenhauser does not meet his burden to show that the defendants'
11 proffered reasons for his non-selection for the REA role were pretext for discrimination. Because
12 he does not point to supporting evidence, there is no genuine dispute of material fact to preclude
13 summary judgment.

## CONCLUSION

For those reasons, the defendants' motion is GRANTED.

**IT IS SO ORDERED.**

Dated: March 14, 2024

William H. Orrick
United States District Judge

13